## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ATHENA REMLINGER )<br><br>*Plaintiff,* )<br><br>v. )<br><br>LEBANON COUNTY; WARDEN )<br>ROBERT J. KARNES; DEPUTY )<br>WARDEN TONY HAUS; CPL )<br>DAVIS; SGT SCOTT HOCKER; )<br>C.O. CHEYENNE GETTLE; C.O. )<br>AMBER SCHWARTZ; C.O. )<br>CRYSTAL HERR, C.O. MICHELLE )<br>WILLIAMS; C.O. KYLE FINK; C.O. )<br>VAN DUZEN; LPN ARLENE and )<br>LPN TRUDY )<br><br>*Defendants.* ) | CASE NO.  1:18-cv-00984<br><br>Judge Yvette Kane<br>M. Judge Joseph F. Saporito, Jr<br><br>*Jury Trial Demanded* |

## AMENDED COMPLAINT

Plaintiff Athena Remlinger brings this action seeking damages pursuant to 42 U.S.C. §1983 against Lebanon County and correctional staff at the Lebanon County Correctional Facility ("LCCF") for the deprivation of her rights guaranteed by the Fourteenth Amendment of the United States Constitution during her pretrial detention and post conviction incarceration.  Ms. Remlinger learned of her high-risk pregnancy after her admission to LCCF.  Despite knowing that she was pregnant, Defendants placed Ms. Remlinger in solitary confinement for over a

month and a half.  LCCF further endangered the health of Ms. Remlinger and her son by inducing labor approximately two weeks prior to her due date for reasons unrelated to her health and due only to impermissible staffing concerns. Defendants further violated Ms. Remlinger's rights under the U.S. Constitution and under Pennsylvania state law when they placed Ms. Remlinger at significant risk of injury by shackling her throughout her labor, during the five days she remained hospitalized post partum, and during her return transport to LCCF.  As a result of Defendants' actions, Ms. Remlinger endured substantial risks to the health and safety of herself and her child, physical injury, and emotional distress during and after labor.

## JURISDICTION AND VENUE

1.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

2.      This Court has jurisdiction under 28 U.S.C. § 1331 over the constitutional claims as well as those arising under 42 U.S.C. § 1983.  This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred in Lebanon County, Pennsylvania, within the United States District Court for the Middle District of Pennsylvania.

**PARTIES**

4.     Plaintiff Athena Remlinger was incarcerated at Lebanon County Correctional Facility at all times relevant to this Complaint.  She has been released and currently resides in Palmyra, Pennsylvania.

5.     Defendant Lebanon County is the political entity that operates the Lebanon County Correctional Facility ("LCCF") that provides for the detention of both pretrial detainees and convicted offenders.

6.     Defendant Robert J. Karnes was the Warden of LCCF at all times relevant to this Complaint.  Upon information and belief he is responsible for the overall oversight, operation and administration of LCCF including the creation and enforcement of policies and procedures and the care and custody of all individuals incarcerated at LCCF.

7.     Defendant Tony Haus was the Deputy Warden of the LCCF at all times relevant to this Complaint.  Upon information and belief he is responsible for the overall oversight, operation and administration of LCCF including the creation and enforcement of policies and procedures and the care and custody of all individuals incarcerated at LCCF.

8.     Defendant Corporal Davis was a LCCF employee at all times relevant to this complaint.  Upon information and belief he was responsible for supervising

correctional officers on his shifts and maintaining the care and custody of those incarcerated at LCCF.

9.      Defendant Sergeant Scott Hocker was a LCCF employee at all times relevant to this complaint.  Upon information and belief they were responsible for supervising correctional officers on his shift and maintaining the care and custody of those incarcerated at LCCF.

10.      Defendant Corrections Officer Cheyenne Gettle was a LCCF employee at all times relevant to this complaint.

11.      Defendant Corrections Officer Amber Schwartz was a LCCF employee at all times relevant to this complaint.

12.      Defendant Corrections Officer Crystal Herr was a LCCF employee at all times relevant to this complaint.

13.      Defendant Corrections Officer Michelle Williams was a LCCF employee at all times relevant to this complaint.

14.      Defendant Corrections Officer Van Duzen was a LCCF employee at all times relevant to this complaint.

15.      Defendants Corrections Officer Kyle Fink was a LCCF employee at all times relevant to this complaint.

16.      Defendant LPN Arlene was the head nurse employed at LCCF at all times relevant to this complaint

17.     Defendant LPN Trudy was a nurse employed at LCCF at all times relevant to this complaint.

18.     All Defendants were at all relevant times acting under color of state law and are sued in their individual and official capacities

## FACTS

19.     Ms. Remlinger was incarcerated at LCCF from approximately April 6, 2017 until January 24, 2018.

20.     Ms. Remlinger pled guilty to charges of forgery and theft in September 2017 and was sentenced in late November 2017.

21.     Ms. Remlinger was a non-violent offender and did not receive any misconducts during her incarceration.

22.     Upon information and belief, Defendants had no reason to believe that Ms. Remlinger was an escape risk.

23.     Ms. Remlinger learned that she was pregnant shortly after she was incarcerated at LCCF.

24.     Her pregnancy was deemed high risk for a number of reasons, including a prior gastric bypass and her history of heroin addiction necessitating the use of methadone.

**Placement in Solitary Confinement**

25.    Ms. Remlinger was placed in the Segregated Housing Unit ("SHU") immediately after she was incarcerated at LCCF.

26.    Ms. Remlinger was placed in the SHU because she was detoxing from heroin.

27.    Upon information and belief, Defendants Lebanon County and Karnes have a policy and practice of housing prisoners who are detoxing in the SHU, without consideration as to whether they are pregnant.

28.    Ms. Remlinger's placement in the SHU continued even after staff at LCCF learned she was pregnant.

29.    People placed in the SHU are housed in conditions of solitary confinement that include confinement to the cell for 22 and 24 hours per day, isolation from normal social interaction with others, and severe restrictions that negatively impact all aspects of their lives.

30.    After thirty days, Ms. Remlinger was moved to the general population.

31.     On or about June 1, under orders from Defendant Davis, Ms. Remlinger was placed in a medical isolation cell, supposedly after Correctional Officer Fisher reported that Ms. Remlinger had not eaten all of her evening snack bag.

32.     As a result of her gastric bypass surgery, Ms. Remlinger can only eat small amounts of food at a time, and she was not in any medical danger at this time.

33.     Ms. Remlinger was held in this medical isolation cell, from approximately June 1, 2017 to July 15, 2017.

34.     While in the medical isolation cell, Ms. Remlinger spent 23 hours a day in solitary confinement, with one hour out-of-cell time for a shower and telephone calls.

35.     The medical isolation cells are not near the medical department.

36.     Ms. Remlinger was not seen by medical staff for the first two weeks she was in medical isolation.

37.     She did not see any medical personnel until she was sent out of LCCF for an appointment with her obstetrician approximately two weeks after her move to the medical isolation cell.

38.     There are no video cameras in the medical isolation cells nor any way for guards to observe individuals in the medical isolation cells except through small flaps on their metal cell doors.

39.     For the majority of the time that Ms. Remlinger was in the medical isolation cell, the flap on her cell door was closed.

40.     Medical staff did not come to her medical isolation cell to check on her.

41.     Ms. Remlinger wrote multiple requests slips to Defendants LPN Arlene, LPN Trudy and Defendant Deputy Warden Haus, asking for an explanation for her being in isolation and asking to be returned to general population, but these requests were ignored or denied until her release on or about July 15, 2017.

42.     Defendant Haus visited Ms. Remlinger at her medical isolation cell on multiple occasions.

43.     Ms. Remlinger repeatedly begged Defendant Haus to be removed from isolation but he refused to alter her placement.

44.     Upon information and belief, Defendants LPN Arlene and LPN Trudy ordered Ms. Remlinger's continued confinement to the medical isolation cells.

45.     Other pregnant women were also placed in medical isolation by the defendants, and on information and believe, these women were not issued misconducts that would have resulted in their placement in solitary confinement for disciplinary reasons.

46.     At least one of these women was kept in the SHU throughout the duration of her pregnancy and when she was post-partum.

47.     The placement of pregnant women in solitary confinement is against

community medical standards.  The National Commission on Correctional Health Care ("NCCHC"), an accrediting agency for prison health care services, has adopted a position statement on solitary confinement, which states that "pregnant women should be excluded from solitary confinement of any duration."

48.    According to the NCCHC, "[i]nternational standards established by the United Nations Rules for the Treatment of Women Prisoners and Non-Custodial Measures for Women Offenders state that pregnant women should never be placed in solitary confinement as they are especially susceptible to its harmful psychological effects."

**Instances of Shackling**

49.    Ms. Remlinger was transported to the methadone clinic every morning to receive methadone.

50.    Ms. Remlinger was also transported to Hershey Medical Center for an ultrasound a month and a half after she learned she was pregnant, and every two weeks thereafter.

51.    Ms. Remlinger never attempted an escape or endangered the safety of herself or the correctional officers during these trips.

52.    Ms. Remlinger was not shackled during any of these trips.

53.    On April 26, 2017, Ms. Remlinger experienced severe bleeding.

54.     Given Ms. Remlinger's high risk pregnancy, paramedics were called to LCCF to take Ms. Remlinger to Good Samaritan Hospital.

55.     Despite the need for emergency care, Defendant Van Duzen refused to let Ms. Remlinger leave LCCF with the paramedics until she was shackled.

56.     On October 16, 2017, Ms. Remlinger was informed by her public defender that her criminal hearing on October 17, 2017, was cancelled as LCCF had scheduled her to be induced that day.

57.     The possibility of inducing labor had never been mentioned to Ms. Remlinger by any of the defendants nor discussed with her by medical staff at LCCF or Hershey Medical Center, nor had any defendant or other medical staff informed her that such a procedure was medically necessary.

58.     Ms. Remlinger did not consent to being induced prior to her due date.

59.     Upon information and belief, Defendant Warden Karnes ordered her court date to be rescheduled so that Ms. Remlinger's labor could be induced.

60.     On October 17, 2017, at approximately 7 a.m., Defendants Gettle and Schwartz transported Ms. Remlinger to Hershey Medical Center.

61.      Defendant Gettle informed Ms. Remlinger that she was being induced because of concerns at LCCF that there would be insufficient staffing at the time that a normal labor would occur.

62.     Upon admission to the hospital, Ms. Remlinger's left leg was shackled to the guardrail of the hospital bed with a leg iron in accordance with the official policy or practice of Lebanon County and LCCF.

63.     After she began receiving the drugs to induce labor, Ms. Remlinger was permitted to sit in a rocking chair instead of being shackled to the bed for approximately an hour and a half.

64.     During this time she was still, without any correctional necessity and with a risk to her health and delivery, shackled by one leg iron to the chair.

65.     When Ms. Remlinger was returned to her bed, Defendant Gettle reshackled her with a chain attaching her left leg and the bed's guardrail.

66.     Ms. Remlinger remained shackled throughout the approximately four and a half hours of labor.

67.     At some point during her labor, Defendant Sergeant Hocker ordered Defendant Schwarz to return to LCCF.

68.     Upon information and belief, he also ordered that Ms. Remlinger remain shackled to the hospital bed guardrail during labor.

69.     Defendants Gettle remained in the delivery room throughout her labor, denying her privacy, and without any correctional justification.

70.    The shackles were only removed at the request of medical staff when they began having difficulties finding the baby's heartbeat, decided that her water needed to be broken, and the shackles were literally preventing delivery.

71.    At that point, there was excessive bleeding requiring an emergency C-section.

72.    Ms. Remlinger's son was unresponsive at birth, and only revived a few minutes later.

73.    Reduced fetal heart rate, uterine rupture, hemorrhaging, and C-section are recognized potential complications with the induction of labor.

74.    When Ms. Remlinger awoke after the C-section, she had been re-shackled to the bed by her left ankle.

75.    She remained shackled for all three shifts for the five days she spent in the hospital postpartum, notwithstanding the lack of correctional justification and the need for medical care including attention to an injury to her bladder that occurred during childbirth.

76.    Throughout her hospital stay, Defendant Corrections Officers Gettle and Schwarz shackled her on the first shift, Defendant Corrections Officer Victoria Herr on the second shift and Defendant Corrections Officer Michelle Williams and Fink shackled her on the third shift.

77.    Upon information and belief, Defendants Davis and Hocker ordered that Ms. Remlinger remain shackled throughout her hospital stay.

78.    Defendants Davis, Hocker, Haus and Karnes knew that Ms. Remlinger was shackled throughout her hospital stay notwithstanding federal constitutional limitations and a state law prohibiting such restraints without correctional necessity as they received regular reports from the Defendants present with Ms. Remlinger throughout her hospital stay.

79.    Upon information and belief, Defendants Lebanon County and Warden Karnes maintained a practice and/or policy of shackling pregnant women during transport, labor and post-partum without an individualized assessment as to whether the pregnant woman presented a substantial flight risk or extraordinary threat to the safety of staff or other detainees.

80.    Ms. Remlinger is aware of at least one other woman who was shackled throughout labor while incarcerated at LCCF.

81.    In 2010, Pennsylvania passed the "Healthy Birth for Incarcerated Women" Act, which restricts the use of restraints on pregnant women.  61 Pa. Const. Stat. Ann. 5905.

82.    The law provides that except for limited circumstances, "a correctional institution shall not apply restraints to a prisoner or detainee known to be pregnant during any stage of labor, any pregnancy-related medical distress, any

period of delivery, any period of postpartum … or transport to a medical facility as a result of any of the preceding conditions or transport to a medical facility after the beginning of the second trimester of pregnancy." 61 Pa. Const. Stat. Ann. 5905(b)(1).

83.    Under the law, restraints can only be used after "an individualized determination that the prisoner or detainee presents a substantial risk of imminent flight or some other extraordinary medical or security circumstance dictates that the prisoner or detainee be restrained to ensure the safety and security of the prisoner or detainee, the staff of the correctional institution or medical facility, other prisoners or detainees or the public."  61 Pa. Const. Stat. Ann. 5905(b)(2).

84.    The state law reflects community medical standards. The American College of Obstetricians and Gynecologists has stated: "Physical restraints have interfered with the ability of physicians to safely practice medicine by reducing their ability to assess and evaluate the physical condition of the mother and the fetus, and have similarly made the labor and delivery process more difficult than it needs to be; thus, overall putting the health and lives of the women and unborn children at risk. . . [t]he practice of shackling an incarcerated woman in labor may not only compromise her health care but is demeaning and unnecessary."[1]

---

[1] Ralph Hale, M.D., Executive Vice President, American College of Obstetricians and Gynecologists, *Letter supporting federal legislation to prohibit shackling incarcerated pregnant women in labor,* June 12, 2007, *available at*

85.    The National Task Force on the Use of Restraints with Pregnant Women under Correctional Custody, initially convened by the Department of Justice, recommended that the use of restraints on pregnant women be limited to "absolute necessity."[2]

86.    Similarly, the American Public Health Association has declared that "women must never be shackled during labor and delivery."[3]

87.    The American Medical Association opposes the shackling of women in labor or recuperating from delivery: "unless there are compelling grounds to believe that the inmate presents: An immediate and serious threat of harm to herself, staff or others; or a substantial flight risk and cannot be reasonably contained by other means. If an inmate who is in labor or who is delivering her baby is restrained, only the least restrictive restraints necessary to ensure safety and security shall be used."[4]

---

http://advocatesforpregnantwomen.org/ACOG_Letter_Shackling.pdf.

[2] BUREAU OF JUST. ASST., U.S. DEP'T OF JUST., BEST PRACTICES IN THE USE OF RESTRAINTS WITH PREGNANT WOMEN AND GIRLS UNDER CORRECTIONAL CUSTODY (2014), *available at* https://www.nasmhpd.org/sites/default/files/Best_Practices_Use_of_Restraints_Pregnant(2).pdf

[3] APHA *Standards for Health Services in Correctional Institutions, 3rd,* 108 (2003).

[4] American Medical Association Resolution 203, adopted 2010.

## CAUSES OF ACTION

**Count I – Violation of the Fourteenth Amendment to the U.S. Constitution:**
**Deliberate Indifference to Serious Medical Needs**
(Against Defendants Lebanon County and Warden Karnes)

88.     Paragraphs 1 through 87 of this Complaint are incorporated by reference.

89.     Defendants Lebanon County and Warden Karnes' decision to induce labor two weeks prior to Ms. Remlinger's due date, solely for administrative reasons, was an act of deliberate indifference to Ms. Remlinger's serious medical needs.

**Count II – Violation of the Fourteenth Amendment to the U.S. Constitution:**
**Shackling During Pregnancy, Labor and Post Partum**
(Against Defendants Lebanon County, Warden Karnes, Cpl. Davis, Sgt. Hocker, and all Correctional Officer Defendants)

90.     Paragraphs 1 through 87 of this Complaint are incorporated by reference.

91.     Defendant Lebanon County and Defendant Karnes' practice and/or policy of requiring mechanical restraints on pregnant women during transport to and from the hospital, while in labor, and on the mother during post-partum recovery, in the absence of a specific and individualized assessment that a laboring or post-partum woman presents a substantial flight risk or extraordinary threat to the safety of staff or other detainees, is objectively unreasonable and was deliberately indifferent to and violated Ms. Remlinger's rights under the Fourteenth

Amendment.

92.    Defendants knew that placing shackles on Ms. Remlinger while pregnant, in labor, and during post-partum recovery posed a substantial risk of serious harm to her safety and health, all in violation of clearly established constitutional rights under Fourteenth Amendment to be free from shackling in these circumstances.

**Count III – Violation of the Fourteenth Amendment to the U.S. Constitution:**
**Solitary Confinement**
(Against Defendants Lebanon County, Warden Karnes, Deputy Warden Haus,
LPN Arlene and LPN Trudy)

93.    Paragraphs 1 through 87 of this Complaint are incorporated by reference.

94.    Defendants imposed conditions of solitary confinement during Ms. Remlinger's pregnancy that were objectively unreasonable and in violation of the Fourteenth Amendment.

95.    Defendants knew that placing Ms. Remlinger in solitary confinement while pregnant posed a substantial risk of serious harm to her safety and health, in violation of clearly established constitutional rights under Fourteenth Amendment.

**Count IV – Intentional Infliction of Emotional Distress**
(Against All Individual Defendants in their Individual Capacities)

96.     Paragraphs 1 through 87 of this Complaint are incorporated by reference.

97.     Defendants' intentional act of placing Ms. Remlinger in solitary confinement while pregnant was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as utterly intolerable in a civilized society, resulting in Mr. Remlinger suffering severe emotional distress.

98.     Defendants' intentional act of shackling Ms. Remlinger throughout her labor, delivery, and post-partum recovery was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as utterly intolerable in a civilized society, resulting in Mr. Remlinger suffering severe emotional distress.

**RELIEF**

WHEREFORE, Plaintiff Athena Remlinger respectfully requests the following relief:

1.     An award of appropriate compensatory and punitive damages against Defendants in favor of Ms. Remlinger in an amount to be determined by the finder of fact;

2.      Reasonable attorneys' fees and costs; and

3.      Such other relief the Court deems just and equitable.


Respectfully submitted,

/s/ *Alexandra Morgan-Kurtz*
Alexandra Morgan-Kurtz
Attorney I.D. No. 312631
Pennsylvania Institutional Law Project
100 Fifth Ave, Ste 900
Pittsburgh, Pa 15222
T: (412) 434-6175
amorgan-kurtz@pailp.org

Angus Love
Attorney I.D. No. 22392
Pennsylvania Institutional Law Project
The Cast Iron Building
718 Arch Street, Suite 304 South
Philadelphia, Pa 19106
alove@pailp.org

David Rudovsky
Attorney I.D. No. 15168
Kairys, Rudovsky, Messing & Feinberg LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
drudovsky@krlawphila.com

*Attorneys for Plaintiff Athena Remlinger*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ATHENA REMLINGER            )
                            )
        *Plaintiff,*        )        CASE NO.  1:18-cv-00984
                            )
    v.                      )
                            )        Judge Yvette Kane
LEBANON COUNTY, et al.,     )
                            )        M. Judge Joseph F. Saporito, Jr.
        *Defendants.*       )


## CERTIFICATE OF SERVICE

I, Alexandra Morgan-Kurtz, certify that on April 18, 2019, I caused to be served a true and correct copy of the foregoing Amended Complaint, upon the following via ECF:

Charles E. Wasilefski, Esquire            Matthew R. Clayberger, Esquire
PETERS & WASILEFSKI                       THOMAS, THOMAS & HAFER, LLP
2931 North Front Street                   305 North Front Street, 6th Floor
Harrisburg, PA  17110-1250                Harrisburg, PA 117108
(717) 238-7555, Ext. 110                  (717) 237-7150
cew@pwlegal.com                           Mclayberger@tthlaw.com

*Counsel for Individual Defendants*       *Counsel for Lebanon County and*
                                          *Warden Karnes*


                                          /s/ Alexandra Morgan-Kurtz
                                          Attorney ID:  PA 312631
                                          Pennsylvania Institutional Law Project

                                          *Attorney for Plaintiff Athena Remlinger*